Jamel WHATLEY, et. al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA, a municipal corporation, et. al., Defendants.**

Civil Action No. 98–2961 (PLF/JMF).

United States District Court, District of Columbia.

Sept. 18, 2002.

**6.** An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

Diana Marjorie Savit, Bowytz, Savit Szymkowicz, L.L.P., Bethesda, MD, for plaintiff.

Barbara A. Miller, Birch, Horton, Bittner & Cherot, Grace Perry–Gaiter, Melvin W. Bolden, Jr., David E. Edmonds, Laurie Pouzzner McManus, Arlington, VA, Laura Elizabeth Jordan, Washington, DC, for defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This case was referred to me by Judge Friedman for the resolution of discovery disputes pursuant to LCvR 72.2(a). I now resolve both *Plaintiffs' Motion to Compel Defendants District of Columbia and Arelene Ackerman to Pay Expert Witness and Attorney's Fees Or, Alternatively, For An Order Directing Defendants to Show Cause Why They Should Not Be Held In Contempt* ("Plains.Mot.") as well as *Plaintiffs' Supplemental Request for Legal Fees and Expenses* ("Plains.Supp.Mot.").

## BACKGROUND

Plaintiffs, Jamel Whatley and his guardian, Esther Williams, bring this action against the District of Columbia ("the District") and several current and former employees of the District in their official and individual capacities. Williams bears sole responsibility for Whatley's health and welfare, including his education. At the time plaintiffs filed the complaint in December of 1998, Whatley was a 10 year old student in the District of Columbia Public School System ("DCPS") enrolled at Ketcham Elementary School ("Ketcham"). Though old enough for the fifth grade, Whatley remained in the third grade. Throughout his schooling, Whatley has experienced academic difficulties and has had significant difficulty learning to read. As a result, Ketcham suggested Whatley repeat the first grade. Complaint ("Compl.") ¶ 10. However, Whatley's academic performance did not improve and he has continued to struggle with his educational pursuits. *Id.*

Despite Whatley's overt academic difficulties, Williams alleges that DCPS neither recommended that Whatley be evaluated for possible special education nor referred Whatley for educational assessments that could have initiated the process of identifying him as disabled and, therefore, in need of special education. Compl. ¶ 11. In 1996, Williams completed DCPS Form 6, which begins the evaluation and placement process for children who may be disabled and in need of special education. According to Williams, an educational assessment was conducted by DCPS and it indicated that Whatley suffers from a learning disorder and should be considered for special education. Compl. ¶ 13.

Two years later, Williams requested that the DCPS Student Hearing Office convene a due process hearing as a result of DCPS's failure to respond to the 1996 request for special education assessment and services. Compl. ¶ 14. Plaintiffs premise their case upon the Individuals

with Disabilities Education Act, 20 U.S.C.A. § 1400 *et seq.* ("IDEA") and 42 U.S.C.A. § 1983, seeking a declaratory judgment that Whatley is a disabled student. Compl. ¶ 18. Additionally, plaintiffs allege that the inattention of the DCPS stemmed from a systematic problem within the DCPS.

## DISCUSSION

By my Order of October 26, 2001, I allowed plaintiffs to file a supplemental affidavit of its costs and expenses in obtaining information from August 9, 2000, up to the present time. The requested affidavit was filed on November 7, 2001, and defendant District of Columbia subsequently responded. First, the District concedes that it owes plaintiffs' counsel $4,399.50. However, the District's arithmetic is incorrect. The District's calculation of the final award is based on the plaintiff's prior claim of $9,449.50, not the revised amount of $ 9,746.28. Plains. Supp. Motion at 1. From this number, the District subtracts $200, which plaintiffs inadvertently failed to do and also excluded $46.78 in other expenses. *Opposition to Plaintiffs' Supplemental Request For Legal Fees and Expenses* ("Defs.Opp."). Therefore, the District's final award calculation is off by $246.78 and its concession will be adjusted upward to $4,646.78.[1] Second, because the District was not involved with negotiating the protective order for Armstrong, the District asserts that it is not required to pay for the fees resulting from that negotiation. *Id.* Lastly, the District claims it is not its financial responsibility to pay for time Mr. Szymkowicz spent familiarizing himself with the case. I will address each objection in turn.

---

1. The District argues that it has no obligation to pay for those expenses and fees incurred prior to August 9, 2000, as per my Order of October 26, 2001. Moreover, the District ob-

*The Mistake*

■ In her supplemental affidavit, Ms. Savit requested an additional payment of $200 for expenses incurred in connection with the original motion to compel discovery, which expenses were unintentionally omitted from plaintiffs initial request. *See* Plains. Supp. Mot. at 4.

The District waxes wroth and claims a "waiver" because of the mistake. First, a waiver is an intentional relinquishment of a known right. BLACK'S LAW DICTIONARY 1574 (7th ed.1999). A mistake is "some unintentional act, omission, or error." *Id.* at 1017. The words are, therefore, antonyms and thus a waiver cannot possibly arise from a mistake. Second, not too long ago, there was a time when opposing counsel, upon learning of a mistake by his opponent, would not object to its correction as a matter of simple courtesy. It is a sad comment on the lack of civility and professionalism of the Bar that such simple courtesy is disappearing and courts are burdened with $200 objections. That is about what this objection is worth. *De minimis non curat lex.* Men not being angels, I shall allow the correction. Speaking of angels, they would weep over what is happening to the practice of law.

*Protective Order*

■ Joyce Armstrong is one of the defendants in this case. Plaintiffs sued her in her individual capacity and in her capacity as Director, Special Advisor, Special Education Division. Compl. ¶ 24–29. Initially, Ms. Armstrong was represented by Corporation Counsel. Later, however, Ms. Armstrong was fired from her position at DCPS and she subsequently challenged that firing. Recognizing that Ms. Arm-

---

jects to the balance of the sum requested by plaintiffs' counsel in their supplemental request for legal fees and expenses.

strong could no longer be represented by the agency that was defending against her employment action, I directed Corporation Counsel to withdraw from her representation by my Order of October 10, 2000.

The relevance of Ms. Armstrong's firing to the case before me is that questions regarding her employment were raised by plaintiffs' interrogatory Number 5. Specifically, plaintiffs demanded to know whether Ms. Armstrong was still employed by DCPS, and if not, what prompted her termination. Corporation Counsel, at the time still representing Ms. Armstrong, initially objected to this interrogatory, asserting a "privacy" privilege. By my Order of August 9, 2000, however, I concluded that all claims of privilege had been waived:

> Interrogatory Number 5. The privilege claimed having been waived, defendants shall answer this interrogatory by providing all reasons why Joyce Armstrong left the employ of DCPS. If necessary, the parties shall promptly submit to me a protective order as to this information.

*Memorandum & Order* at 5.

The District complied with this order by ultimately providing plaintiff four reasons for Armstrong's termination, one of which was that she "failed to complete the assessment of 184 students for special education services within the 120–day period established by Congress in October 1998." *Plaintiffs' Response to District of Columbia Defendants' Opposition to Supplemental Request for Legal Fees and Expenses* ("Plains.Response") at 3 and Exhibit A. Plaintiffs' counsel contended that the District should have stated more specifically why Armstrong failed to complete the assessments and whether Whatley was one of those 184 children. Counsel insisted on additional supplementation of the answer to interrogatory number 5, believing that the answer given was insufficient.

Previously, I had urged the parties to attempt to work out their differences. Plaintiffs' counsel believed, with justification, that the supplementation she sought would be found in the record created by Armstrong's challenge to her termination. She insists, however, that in a meeting held in December, 2000, the Assistant Corporation Counsel refused to provide her with any greater particulars regarding Armstrong, relying on privilege and privacy grounds. Plaintiffs' counsel insists that these are the very objections I ruled by my August 9, 2000, order, had been waived. Rather than return to me with another motion to compel, plaintiffs' counsel proposed that she be permitted access, subject to a protective order, to the file created by Armstrong's challenge to her termination. In the meanwhile, Armstrong had retained her own counsel and plaintiffs' counsel negotiated a protective order with this new counsel.

The District takes the technical position that it should not have to pay for time spent negotiating that protective order with Armstrong's counsel. But, as plaintiffs point out, the District continued to refuse to produce any more particulars about Armstrong's firing. I am certain that, had plaintiffs' counsel sought more information by seeking the entire file created by Armstrong's firing, I would have granted relief once I learned that one of the allegations made by DCPS justifying Armstrong's firing had to do with alleged deficiencies in her performance as to special education children like Whatley. Obviously, that DCPS found Armstrong's performance in this area deficient would be a remarkably damaging admission if plaintiffs could show a sufficient connection between the deficiencies the DCPS found and the deficiencies about which plaintiffs complained in Whatley's case. The best possible source of that information would be the administrative record

created by Armstrong's challenge to her termination. I am, therefore, certain that I would have ordered its production as the most efficient means of getting plaintiffs discoverable information had a formal motion to compel its production been made. Plaintiffs' counsel's securing it by protective order, therefore, relieved the court of having to consider still another motion to compel and opposition. It would be perverse to deny her compensation for a conscientious and ultimately successful effort to avoid a greater cost by litigating her entitlement to the administrative record. Fees incurred in negotiating the protective order with Armstrong's counsel are, in my view, as legitimate as the fees claimed for other work to which the District takes no exception.

### Szymkowicz Reimbursement

In December of 2000, Ms. Savit was working through a rigorous deposition schedule in an unrelated case. As a result of those time constraints, Ms. Savit delegated her responsibilities to a second attorney, Mr. Szymkowicz. In order to comply with discovery deadlines, it was necessary for Ms. Savit to reallocate her time. That, in turn, required another attorney to temporarily take over the case. According to the bill submitted, Mr. Szymkowicz spent approximately 16.45 hours working on outstanding discovery matters regarding production of documents. Mr. Szymkowicz spent only 4.75 of those hours acquainting himself with "the pending discovery matter." *Affidavit of Diana M. Savit*, November 7, 2001. The District

argues that this request for fees is "totally unnecessary." Defs. Opp. at 5. Quite the contrary. Not only is it appropriate for an attorney to become familiar with a case he/she is working on, but it is also a key to thorough lawyering. Additionally, acceptance of the District's argument that Mr. Szymkowicz needed only to review the sanctions motion to be familiar with the pending discovery dispute would create an intolerable, judicial micromanagement of an attorney's preparation of his or her case.

Having determined that Mr. Szymkowicz's time is compensable, the final issue is whether the fees charged were reasonable. *See Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C.1983)(reimbursement of fees incurred in connection with the preparation of litigation materials is appropriate). One of the results of the *Laffey* decision was the creation of a matrix which is then used to determine prevailing market rates for litigation counsel in Washington, D.C.[2]

The District disputes Szymkowicz's claim to an hourly rate of $220. However, the affidavit submitted by Ms. Savit demonstrates that Mr. Szymkowicz is a 25 year member of the D.C. Bar and 15 year member of the Maryland Bar with experience in litigation, estate planning, probate, and arbitration. Plains. Response at Exhibit B. In addition, Ms. Savit states that Mr. Szymkowicz's regular hourly rate is $220. *Id.* at 1. Finally, according to the *Laffey* Matrix, with over 25 years of experience, Mr. Szymkowicz could have charged as

---

2. This matrix, commonly referred to as the *"Laffey* Matrix" or the "United States Attorney's Office Matrix," is based on hourly rates allowed by the District Court in *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354 (D.D.C.1983). Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C.Cir.1988)(en

banc). Subsequently, the Court of Appeals stated that parties may rely on the updated *Laffey* Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n. 14 (D.C.Cir.1995).

much as $360 per hour for work performed in 2001–2002. Thus, counsel's claim of $220 per hour is by no means excessive.

### Interest

In addition to their supplemental request for legal fees, plaintiffs' counsel filed an original motion to compel the District to pay expert witness and attorney's fees. In that motion, plaintiffs seek pre and post-judgment interest on both sums due to substantial delays in payment. Plains. Mot. at 3. Plaintiffs' motion brought to this court's attention the utter disregard the Office of Corporation Counsel has for meeting specified deadlines. *Id.* at 2–3.

Plaintiffs' designated expert witness, Dr. Terry Edelstein, was deposed on June 19, 2001, and Mr. Bolden of the Office of Corporation Counsel agreed to pay for the expert testimony. *Id.* at Exhibit A ¶ 16–22. On June 27, 2001, Dr. Edelstein submitted an invoice to Mr. Bolden. *Id.* at Exhibit B. Thereafter, having received no response from the District, on November 12, 2001, plaintiffs' counsel inquired about Dr. Edelstein's invoice. *Id.* at Exhibit C. Over two weeks later, on November 30, 2001, the District finally responded, stating that "the Edelstein voucher [had been submitted] for payment many months ago," and that Mr. Bolden had inquired about the delay. *Id.* at Exhibit D. However, according to the record, no update was ever provided to plaintiffs' counsel. The new year passed with neither a communication nor a check from the District in payment of Dr. Edelstein's invoice. *See*

*id.* at Exhibits E & F. On February 1, 2002, a check was made out to School Support Services, L.L.C., (the name of Dr. Edelstein's practice) but mailed, however, to a completely incorrect address.[3] Finally, on April 2, 2002, Dr. Edelstein received the payment—over nine months from the date of the deposition and two months after the check was sent to the wrong address.

Lastly, payment of awarded attorney's fees by Order of this court has also been late in coming. *Order*, October 26, 2001[# 86]. The District first requested Social Security and tax identification numbers for plaintiffs and their counsel. Plains. Mot. at Exhibit D. That information was promptly supplied by plaintiffs on December 2, 2001. *Id.* at Exhibit G. In their opposition to plaintiffs' motion to compel, the District claimed the payment was scheduled to be made "on or about March 8, 2002." *Opposition to Plaintiffs' Motion to Compel Defendants District of Columbia and Arlene Ackerman to Pay Expert Witness and Attorney's Fees Or, Alternatively, For An Order Directing Defendants to Show Cause Why They Should Not Be Held In Contempt* ("Defs.Opp.") at 1. Payment was eventually made by check dated March 12, 2002, and was received by plaintiffs' counsel on March 25, 2002. Again, this payment was made close to five months after this court awarded attorney's fees for plaintiffs.

■ In my view, Ms. Savit is entitled to post-judgment interest as a matter of statutory right. 28 U.S.C.A. § 1961(a)(West

---

3. The check was mailed to 1332 Connecticut Avenue, Suite # 250, Washington, D.C., 20036. In a letter dated March 16, 2002, by Dr. Edelstein to Mr. Bolden, it was clearly noted both in the text of the letter and on the letterhead that the correct address of School Support Services, L.L.C., was 4308 Montgomery Avenue, Bethesda, MD 20814. This address was duly recorded at the deposition, on the original invoice, and on subsequent invoices. *Plaintiffs' Reply to Defendants District of Columbia and Arlene Ackerman To Pay Expert Witness and Attorney's Fees Or, Alternatively, For An Order Directing These Defendants to Show Cause Why They Should Not Be Held In Contempt* ("Plains.Reply") at Exhibit H.

Supp.2002). I note, however, with reluctance, that Dr. Edelstein, is not entitled to interest for the period from the submission of his invoice on November 5, 2001, until payment on April 2, 2002, because no "money judgment" was entered in his behalf under that statute. Dr. Edelstein can only rely on Mr. Bolden's promise to pay made at the deposition. I note here only that the District of Columbia has created for itself an exception to the Bar's practice of promptly paying for what it purchases. In the future, I will seriously consider requiring the District to pay in advance for any expert deposition it seeks to take or preclude it from taking it.

Thus, Ms. Savit is entitled to post-judgment interest at a rate of 2.379% for the time period between October 26, 2001, and March 12, 2002.[4] She will also be entitled to interest on the amount I am awarding now by Order of this Court, to be calculated for the period of time between the date of this order until the day she is paid. Such additional interest will be determined in accordance with 28 U.S.C.A. § 1961(a). I will, however, deny any claim for pre-judgment interest. I find that the one case disallowing it in this situation to be persuasive. *Remington v. North American Philips, Corp.*, 763 F.Supp. 683, 684–85 (D.Conn.1991).

An Order accompanies this Memorandum Opinion.

---

4. *See* 28 U.S.C.A. § 1961(a); *http://www.federalreserve.gov/Releases/h15/20011022/* for the calculation of the rate.