Frank **TAUCHER**, et al., Plaintiffs,

v.

William J. **RAINER**, et al., Defendants.

Civil Action No. 97–1711 (RMU/JMF).

United States District Court,
District of Columbia.

Nov. 24, 2003.

See also, 150 F.Supp.2d 24.

Clint Bolick, Scott G. Bullock, William H. Mellor, Institute for Justice, Washington, DC, for Plaintiffs.

William S. Liebman, Michael J. Garawski, Martin B. White, U.S. Commodity Futures Trading Commission, Washington, DC, for Defendants.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

### Introduction

Plaintiffs are commodity advisory publishers and their subscribers. Defendants are the Commodity Futures Trading Commission ("CFTC") and its commissioners.

Plaintiffs prevailed in their constitutional challenge to a CFTC regulation that required the publishers to register with the agency before publishing information on commodity trading. *Taucher v. Born,* 53 F.Supp.2d 464 (D.D.C.1999)(Urbina, J). The defendants' appeal was voluntarily dismissed and plaintiffs seek attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)[1] ("EAJA").

### Prior Opinions

In my first opinion in this case, I concluded that the non-profit, tax-exempt public interest law firm that represented the plaintiffs, the Institute for Justice, was not a prevailing party entitled to make an application for fees under EAJA. Therefore, only clients of the Institute for Justice could be prevailing parties, and, in order to qualify, they had to file certificates establishing their eligibility under EAJA by showing that they each had a net worth less than $2,000,000. 28 U.S.C. § 2412(2)(B). *See Taucher v. Rainer,* 150 F.Supp.2d 24, 26 (D.D.C.2001).

In a second opinion, I concluded that the defendants' position was not substantially justified and that there were no special circumstances that made an award of fees under EAJA unjust. Defendants also claimed, for reasons I will explain later, that none of the subscribers were prevailing parties. Since there were only three surviving publishers of the ten original plaintiffs, defendants insisted that plaintiffs should not receive more than 30% of the fees sought. I rejected this demand and indicated that I would make my decision based on the reasonableness of the fee request rather than reducing the fees by any strict percentage. *Taucher v. Rainer,* 237 F.Supp.2d 7, 16 (D.D.C.2002).

### The Fee Petition

Plaintiffs have filed a now-amended fee petition in which the attorneys who worked on the case have each filed affidavits, attesting that attached to their affidavits is "an itemized, contemporaneously recorded statement of the hours and description of the services rendered" by each attorney. Affidavit of Dana Berliner, *Plaintiffs' Reply to Defendants' Memorandum in Opposition to Plaintiffs' Amended Application for Fees under the Equal Access to Justice Act,* Exhibit A.[2]

The statement of hours is a spreadsheet in the following format:

| Date | Hours Worked | Description of Activity [3] |
|---|---|---|

1. All references to the United States Code are to the electronic versions that appear in Westlaw or Lexis.

2. I will refer to the pleadings filed as follows:
 1. *Plaintiffs' Amended Application for Attorney and Expert Witness Fees Pursuant to Equal Access to Justice Act* "Pet."
 2. *Defendants' Memorandum in Opposition to Plaintiffs' Amended Application for Fees* under the Equal Access to Justice Act "Opp."
 3. *Plaintiffs' Reply to Defendants' Memorandum in Opposition to Plaintiffs' Amended Application for Fees under the Equal Access to Justice Act* "Reply"

3. There are other columns, but they are blank.

Plaintiffs then take the total hours worked by all the attorneys, 1,451 hours, and multiply them by $125 to arrive, after certain adjustments, to the hourly fee they seek, $190,581.80. That includes $9,377.50 due an expert witness for his fees and disbursements. Reply at 3 and attached Expert Witness Documentation.

### Defendants' Objections

Defendants advance the following objections to the petition:

1. Since the subscribers are not prevailing parties, all services done for the subscribers are not compensable.

2. Fees incurred opposing defendants' appeal are not compensable because plaintiffs did not prevail on appeal.

3. Fees pertaining to *amici curiae* (hereafter "*amici*") are not compensable because Judge Urbina's opinion made no mention of any argument made by *amici.*

4. The amount sought for 110 hours of trial time for the 6 lawyers who participated in the bench trial is excessive. Only the trial time of lead counsel, Scott Bullock, should be compensated.

5. The time spent briefing the issues resolved by my decision of December 18, 2002, *Taucher*, 237 F.Supp.2d at 7, was excessive and should be reduced.

6. Plaintiffs' counsel should not be compensated at the EAJA rate of $125 per hour until they first identify their usual billing rates.

7. The time spent by plaintiff's expert witness other than for the day before and the day of his attendance at trial should not be compensated due to the lack of documentation identifying the services he provided.

8. The time spent by plaintiffs' counsel advancing an argument that was rejected should not be compensated.

Finally, defendants make one additional objection that requires more explanation. When the case began, Bruce Babcock, a publisher, was ill. He subsequently died, and his case was dismissed on January 14, 1999. His estate never filed the required net worth statement. Neither did publisher, Frank Taucher, nor subscriber, Romer McPhee. Thus, two of the four prevailing publishers, Babcock and Taucher, and one of the five prevailing subscribers, McPhee, are not personally eligible for fees under EAJA because they never established a net worth of less than $2,000,000. *See* 28 U.S.C. § 2412(d)(2)(B).

The eligibility of the plaintiffs is explained by the following chart that appeared in my opinion of December 19, 2002:

| Plaintiff | Receipt of Declaration | Net Worth Less than $2M |
|---|---|---|
| 1. Frank Taucher | No | n/a |
| 2. Stephen Briese | Yes | Yes |
| 3. Frederick J. Kastead[4] (replacing B.A. Thunman) | n/a (Yes) | n/a (Yes) |
| 4. Bruce Babcock (Deceased) | No | n/a |
| 5. Robert Miner | Yes | Yes |
| 6. Galen Cawley | Yes | Yes |
| 7. Arthur Hayner | Yes | Yes |
| 8. Edward Hearne, III | Yes | Yes |
| 9. Roemer McPhee | No | n/a |
| 10. Roger Rines | Yes | Yes |

As is evident from the chart, those plaintiffs who submitted net worth statements

---

4. The parties jointly stipulated that, based on certain representations regarding Kastead's publications, the CFTC would not require that Kastead register with the CFTC as a CTA. *See Taucher v. Born,* 53 F.Supp.2d at 465.

meet EAJA's financial eligibility requirement. Plaintiffs Taucher, Briese, and Miner are publishers; Cawley, Hayner, Hearne, McPhee and Rines are subscribers. Hence, Taucher and Babcock, who are publishers, and McPhee, a subscriber, are ineligible for EAJA fees.

Defendants first argue that all of plaintiffs' time entries are so undetailed that disallowance of all the fees they seek is required. Opp. at 12–13. Failing that drastic remedy, defendants suggest that all time identified as having been spent on work for ineligible plaintiffs must be disallowed. Defendants would extend this to any entry where any of the ineligible plaintiffs is named, even if the entry seems to indicate work done on other matters during the same block of time. According to the defendants, the failure of plaintiffs' counsel to keep entries that separated work done for eligible plaintiffs from work done for ineligible ones means that they should forfeit compensation for any entry where they did work for both because it is now impossible for the court to differentiate compensable from non-compensable fees. Hence, defendants insist that, if plaintiffs are to recover at all, the court first deduct fees for work done that is, in and of itself, non-compensable, irrespective of the plaintiff on whose behalf it was done. Defendants argue that the resulting fees must then be reduced proportionately by the number of ineligible plaintiffs. Thus, of the $190,581.80 ultimately claimed by plaintiffs, defendants claim that, if plaintiffs recover any fees whatsoever, they should not be more than $70,119.30. *Compare* Opp. at 23 *with* Reply at 17.

### Summary of This Opinion

For the reasons stated in this Opinion, I conclude that the subscribers are prevailing parties and that the time spent opposing the defendants and on matters pertaining to *amici* are compensable. I will also allow the expert's compensation in full. I

agree with the defendants, however, that the time spent for the six lawyers at trial and on the briefing of the issues resolved by my December 12, 2002 decision was excessive, and I have arrived at more reasonable figures.

I do agree, however, that any work done on behalf of ineligible plaintiffs is not compensable, whether the entry shows that work was specifically done on behalf of that plaintiff or the entry does not permit me to differentiate between the work done for an ineligible plaintiff and that done for an eligible one. I will not, however, require any further reduction because three of the plaintiffs were ineligible under EAJA.

Finally, I will allow plaintiffs the EAJA rate of $125 per hour, and I will reject defendants' contention that they are seeking compensation for advancing an argument I rejected.

### Nature of the Problem Presented by the Participation of the Subscribers

■ The plaintiffs in this case were either publishers or subscribers. Obviously, the publishers claimed a right to publish, free of any obligation to register, and the subscribers claimed a right to read what the publishers published. The defendants attacked the standing of both by moving to dismiss the case, but Judge Urbina denied the motion. In the pleadings filed before the motion to dismiss was denied, the parties addressed the subscribers' standing but, from that point on, no one saw any need to discuss whether the registration scheme violated the subscribers' rights in a way that was different from the way it was said to violate the rights of the publishers. At that point, if Judge Urbina had concluded that the publishers' rights were violated, there would have been no need to discuss whether the subscribers' rights were also violated. Their rights

were, in this sense, derivative of the rights of the publishers. On the other hand, had Judge Urbina ruled against the publishers, it is impossible to conjure a legal theory that would have permitted the publishers to lose but the subscribers to win. The subscribers' legal fate therefore rose or fell solely on the fate of the publishers once the subscribers' standing was established. Hence, when the final judgment was rendered in favor of the plaintiffs, *i.e.*, all of them, no one ever suggested (or thought of suggesting) that final judgment only be rendered on behalf of the publishers. To have done so would have been to negate the determination that the subscribers had standing to assert the unconstitutionality of the registration scheme at issue.

Although the defendants never moved Judge Urbina to enter judgment for anyone other than "the plaintiffs," they now insist that the subscribers were not prevailing parties because Judge Urbina did not specifically discuss how the registration scheme violated the constitutional rights of the subscribers. It then follows that, since plaintiffs' counsel cannot segregate the work they did for the subscribers from the work done for the publishers, they are not entitled to the fees they seek without a healthy reduction for the work done for the subscribers.

But, defendants forget that the subscribers did prevail. They beat back the defendants' challenge to their participation in the law suit and, having established their right to remain, were some of the plaintiffs who secured final judgment. If that is not prevailing, one wonders what is. Furthermore, since, as I have explained, the subscribers' rights were derivative of the publishers' rights, Judge Urbina's decision not to independently describe the subscribers' rights is perfectly understandable. Once he found that the registration scheme violated the publishers' rights, there was no reason whatsoever to discuss the subscribers' rights. Judges are not supposed to go looking for trouble when constitutional issues are presented. *See Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 345–48, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (courts should only rule on constitutional issues as a last resort). That Judge Urbina did not discuss the subscribers' rights is insignificant and does not warrant any deduction in the fees sought.

## Fees on Appeal

██ Defendants filed a notice of appeal of Judge Urbina's decision on August 19, 1999. By an order of October 25, 1999, the court of appeals required the defendants' brief to be filed by December 8, 1999, plaintiffs' by January 7, 2000, and defendants' reply brief to be filed by January 21, 2000. Five days before their brief was due, defendants moved the court of appeals to hold the case in abeyance pending the completion of rulemaking proceedings that would either moot the appeal or significantly affect the issues on appeal. Defendants indicated that a proposed rule, conforming to the restrictions Judge Urbina imposed upon the application of the provision of the Commodity Exchange Act at issue, would, if enacted, render the appeal moot. Plaintiffs resisted the motion and ultimately prevailed. The court of appeals denied defendant's motion to hold the case in abeyance as well as a subsequent motion to stay the briefing schedule. Defendants then filed their brief on December 8, 1999 and, as required, plaintiffs filed theirs on January 7, 2000. Defendants filed their reply on January 21, 2000. On March 22, 2000 the defendants filed a stipulation to dismiss the case voluntarily because the rule making suggested by their motion to hold the case in abeyance had now been completed. The appeal was then dismissed.

Defendants make the remarkable argument that, since the plaintiffs did not prevail and secure relief by virtue of a judgment by the court of appeals, their work in the court of appeals is not compensable under EAJA. First, defendant do not explain why a party does not prevail when his opponent throws in the towel as these defendants certainly did. Second, it is one thing to hold that EAJA does not permit legal fees merely because a judicial determination serves as a catalyst for agency action. It is quite another for a government agency to take an appeal, force its opponent to brief the questions presented, and then escape liability for the fees incurred because it modified its procedures after its opponent's brief was filed. Once the court of appeals denied the defendants' motion to hold the case in abeyance, the die was cast. The parties had to file their briefs, for the deadlines set were inexorable.[5] Plaintiffs' counsel had no choice but to protect their clients by filing the brief. Yet, as defendants would have it, when they voluntarily dismissed the appeal they had brought, their doing so somehow extinguished plaintiffs' right to be compensated for writing the brief that the defendants' appeal forced them to prepare. That approach is unfair to the point of being unconscionable and I will not permit it.

### Amici Participation

■ This case involved constitutional questions that attracted the *amici* participation of two organizations in support of the plaintiffs, the Reporters Committee for the Freedom of the Press and the Financial Publishers Association. Defendants attack the reasonableness of the fees predicated on plaintiffs' counsel's work pertaining to *amici* participation on the grounds that there is no evidence that the *amici's* participation contributed to plaintiffs' success because Judge Urbina did not specifically accept any argument *amici* made and his decision does not even mention them. Opp. at 17. However, as defendants would have to concede, it is just as likely that *amici's* arguments did influence Judge Urbina, but that he saw no need to specifically reference them. More to the point, cases raising constitutional issues attract *amici* participation that can advance one's client's interests. Their participation requires coordination with counsel for *amici* and, at a minimum, reviewing what *amici* submit. To disallow all time spent by counsel pertaining to matters arising because of *amici* participation ignores that attending to matters arising from their participation is what every conscientious lawyer would do, whether or not the court sees fit to mention *amici* arguments in its final decision. The deduction defendants seeks is utterly arbitrary, and I will not allow it.

### Apportionment—Plaintiffs' Position

What should be the simple question of ascertaining a reasonable fee for the services provided is complicated by the presence of ineligible persons among the publishers and subscribers.

Plaintiffs' counsel have waived all fees based on entries in their submissions that contained specific references to Taucher and Babcock, permitting the conclusion that all the work done and reflected in that entry pertained to them. There were no entries that specifically referred to McPhee.

In several entries, however, the words "Taucher" or "Babcock" appear but it is impossible to tell from the entry what specifically was done as to "Taucher" or

---

5. *See* D.C.Cir. R. 28(e)(4)(f)(1)(court disfavors motions to extend time for filing briefs; will be granted only for extraordinarily compelling reasons).

"Babcock" and what was done for some other purpose.

Now that Taucher and Babcock (and McPhee) are known to be ineligible, plaintiffs propose two solutions. First, plaintiffs propose to delete and not seek compensation for any entry where it is clear that all time spent pertained to "Taucher" or "Babcock." As to other entries where those names appear but there is a reference to other work, plaintiffs propose deducting one half of the fees sought for such periods of time. Plaintiffs resist any further reduction on the grounds that they could not have been expected to log in their time entries work done as to a specific plaintiff unless the work being done was in reference to that particular plaintiff, such as his deposition or his trial testimony. They insist that, by its very nature, every legal argument they made pertained to all plaintiffs, who were identically situated in their assertion that the registration scheme violated their rights. To nevertheless reduce the hours because of the presence of ineligible persons would, in plaintiffs' view, irrationally reduce the fee when their absence from the lawsuit would not have made any difference whatsoever in the amount or nature of the services provided.

## Apportionment—Defendants' Position

Defendants insist that the presence of ineligible persons within the publisher and subscriber groups first mandates the disallowance of any entry in which the names "Taucher" and "Babcock" appear. Defendants, therefore, reject plaintiffs' proposal to deduct one half of the time for any entry in which counsel did work pertaining to ineligible persons in addition to other work and demands the rejection of the entire entry.

Even that is not enough. Defendants then argue that some of the time that remains after the elimination of all entries in which the words "Taucher" and "Babcock" appear, had to be spent working on behalf of ineligible plaintiffs. They then demand an arithmetical reduction in the proportion of eligible plaintiffs to ineligible ones so that, under their logic,[6] plaintiffs' counsel would be compensated at a rate 30% lower than the original amount sought.

## No Further Apportionment Is Necessary

█ As defendants seem to forget, I rejected such an arithmetical reduction in my December 2002 opinion. *Taucher*, 237 F.Supp.2d at 13–14. In that decision I was assuming, for the sake of the argument, that the subscribers might not be eligible because they did not prevail. Since I have now concluded that they are eligible, the narrow question presented is whether the fees plaintiffs seek should be reduced by 30% because of the presence of three ineligible plaintiffs.

As pointed out in my earlier opinion, courts have apportioned fees among eligible and ineligible plaintiffs but have not done so automatically. *Id.* at 13. The primary motivation behind apportionment is the fear that without it, an ineligible plaintiff will get a free ride at the government's expense. *American Ass'n of Retired Persons v. EEOC*, 873 F.2d 402, 406–07 (D.C.Cir.1989) (*citing Louisiana ex rel. Guste v. Lee*, 853 F.2d 1219, 1225 (5th Cir.1988)). *Accord: United States v. 27.09 Acres of Land*, 43 F.3d 769, 774–75 (2d Cir.1994); *Washington Dept. of Wildlife v. Stubblefield*, 739 F.Supp. 1428, 1432 (W.D.Wash.1989).

---

**6.** Note that defendants predicate the ratio they propose on the ineligibility of all the subscribers, a position that I reject. Hence, I have to modify their arithmetic to allow for that difference.

Take, for example, a case in which two Mom and Pop groceries are co-plaintiffs with Walmart in a lawsuit.[7] If Walmart participates fully in the litigation and would have brought the suit even without the smaller groceries' participation, it seems absurd to grant full EAJA fees without allowing for Walmart's ineligibility. *See Louisiana,* 853 F.2d at 1224. If, on the other hand, the Mom and Pop stores do nearly all the work and Walmart does little, it is equally unfair to diminish what they recover merely because Walmart was a co-plaintiff. *See id.* In the latter scenario, it looks like the *government* is getting the free ride because of Walmart's mere presence in the lawsuit.

■ Co-existing is the principle that EAJA permits reimbursement of the attorney's fees paid by an organization that qualifies even though its members do not. *Nat'l Ass'n of Manufacturers v. Dep't. of Labor,* 159 F.3d 597, 603 (D.C.Cir.1998) ("NAM"). Hence, the National Association of Manufacturers qualifies for EAJA even though, let us say, Walmart is one of its members.

Additionally, federal courts have held that lawyers who take *pro bono* cases and, therefore, would not have recovered any fees had their clients lost were nevertheless entitled to recover attorney's fees under EAJA. This is based on the rationale that the EAJA's attorney fees provision was no less applicable where there were no actual fees "incurred by" the litigant because he was represented by *pro bono* counsel. *Id.* at 606 (government acknowledges cases in which "this and other courts have held that parties may recover EAJA fees to pay such [*i.e. pro bono* ] counsel") (citing *AARP,* 873 F.2d at 406). Hence, it would have to follow that, if the plaintiffs in this case had formed themselves into an organization that qualified for EAJA, they would not be denied relief under EAJA either because one or more of them did not qualify independently for EAJA or because counsel represented the organization *pro bono.* The nice question presented, therefore, is whether the result should be any different in the case at bar because 1) plaintiffs did not form an organization, 2) three of the individual plaintiffs are ineligible, and 3) all plaintiffs were represented by *pro bono* counsel.

First, that plaintiffs did not form an organization is insignificant. It borders on the fatuous to say that what we can call "The Committee Against Pre–Registration" should qualify for full EAJA reimbursement but that the ten members who make up that committee do not qualify at all because there are two ineligible members. Surely, that exalts form over substance and puts a premium on how plaintiffs are organized rather than on the reasonableness of the fees their counsel seek.

Second, it is certainly true that the entries in the time records identify work that is, on occasion, identified by the name of a plaintiff and, more specifically, by two of the three ineligible plaintiffs. Additionally, as I have noted, there are entries where the name of an ineligible plaintiff appears, but the entry is too cryptic to permit a conclusion as to how much work was done on behalf of an ineligible plaintiff and how much on behalf of an eligible one. If, as I intend to do, I eliminate all such entries, the remaining entries show work that advanced the interests of all plaintiffs. To reduce, by any measure, the compensation for that work because of the presence of three ineligible plaintiffs punishes plaintiffs' counsel for not eliminating them be-

---

7. As the world knows, Walmart's gross revenues are greater than the gross domestic product of several nations such as Greece, Egypt and Thailand. *See* http: //www.gritty.org/Pages/GrittyBook/pages/04NationsVGlobals.pdf.

fore filing the complaint. This result is clearly out of proportion to any such "mistake" particularly when everyone has to agree that the quantum of work plaintiffs counsel did advancing plaintiffs' collective interest would have been exactly the same whether there were seven plaintiffs or ten.

Third, it is hard to see who may be getting a free ride that has to be prevented. All we know about one of the ineligible plaintiffs is that he is dead, and it borders on the fatuous to see him as getting a free ride simply because he died before the trial. As to the others, all we know is that they did not file the required EAJA net worth form. It is silly to see them, on this record, as conniving to get "free legal services" at the defendants' expense. Surely, there is no reason to be concerned about the possible outcome suggested in the *NAM* case, that an ineligible plaintiff might actually direct the litigation and pull the strings of the eligible plaintiffs. See *NAM*, 159 F.3d at 602.

Moreover, if one takes the defendants' best case and insists upon a proportionate reduction of the fees because of the presence of the ineligible plaintiffs, I remain as concerned now as I did earlier about the relation, if any, between the percentage reduction sought and the history of the litigation or the purposes of EAJA. Reducing the fees by the ratio of eligible to ineligible plaintiffs is not exercising discretion; it is abnegating it by pretending that there is some logical connection between the ratio and some purpose or policy. There isn't. Such an approach is simply a superficially attractive way of appearing to be fair when one is merely choosing a method of apportionment without rhyme or reason.

I would find such a proportionate reduction much more attractive if there was some connection between the reduction sought and the work actually done. In other words, the reduction sought would have to correspond to work that served the unique interests of the ineligible plaintiffs. The converse appears to be true. Once we eliminate the entries that mention the ineligible plaintiffs, the remaining entries reflect work done for all the plaintiffs, eligible and ineligible. Yet, we would be reducing the amount of fees by what is, in essence, a random percentage in the teeth of the only thing we know—that nearly [8] all the work was done to advance the collective interests of all plaintiffs. To force such a reduction to prevent some mysterious "free ride" is to engage in utterly arbitrary and unthinking action.

 Finally, there are, as always, competing interests. By enacting EAJA, Congress intended to advance the societal interest in the judicial invalidation of illegal government action by allowing for the recovery of attorney's fees. *Taucher*, 150 F.Supp.2d at 26 & n. 1. Hence, the courts are willing to compensate *pro bono* counsel who undertake cases even though their clients do not incur fees. It is true that EAJA, as a waiver of sovereign immunity, must be strictly construed and should not be abused by allowing fee recovery to those who already had the means and desire to attack government actions without it.[9] But, the necessity of encouraging *pro bono* counsel to undertake attacks on improper government action is equally compelling. As I have pointed out, the defendants in this case argued that they had no authority to decline to enforce an unconstitutional scheme. Having made that contention, their current argument that *pro*

---

**8.** I say "nearly" because the work done to establish the subscribers' standing favored their and not the publishers' interests.

**9.** *Sierra Club*, 776 F.2d at 394 (Meskill, J., dissenting).

*bono* counsel should not be fully compensated for stopping defendants from violating the Constitution, when they were supposedly powerless to do so, rings terribly hollow.

## Required Deductions

Having rejected the defendants' generic objections, I turn to their more specific complaints and find that I agree with their claim that the time spent on trial and briefing in one phase of the EAJA litigation before me was excessive. I reject, however, defendants' contention that the expert witnesses are not entitled to the compensation they seek.

### Trial Time

█ A non-jury trial started before Judge Urbina on May 3, 1999 and ended on May 5, 1999. The defendants have no quarrel with the 40 hours Scott Bullock charges for his attendance at trial, but object to paying for the presence of anyone else. Specifically, defendants objected to Chip Mellor's claim for 30 trial hours, Miranda Perry's claim for 24 trial hours, and Dana Berliner's claim for 11.5 trial hours. The total for all four attorneys is 105.5 hours. Defendants insist this is excessive because the trial transcript reflects only 16 hours of actual trial time from May 3–May 5, 1999.

Defendants' point is well taken. It is rare in this court for more than two lawyers to participate actively in the trial of a case, even complicated ones. Furthermore, I would be more willing than I am to allow fees for the participation of Mellor, Perry, and Berliner if their diary entries told me specifically what they did during the trial to aid Bullock. Unfortunately, their entries indicate only they attended the trial, had unspecified discussions with Bullock, or passed him notes during the trial. The lack of specificity and the excess of having more than two lawyers compensated for a three-day trial compels me

to conclude that plaintiffs' claim is unreasonable. Instead, I will allow Bullock's 40 hours and add an additional 24 hours to reflect the participation of one additional lawyer (16 hours of trial time and 8 hours of preparation). Hence, I will allow 64 total hours for trial. That seems to me to be fair.

### EAJA Fee Application

█ My decision of March 30, 2001 resolved the issue of whether plaintiffs or their counsel were the prevailing parties who could file under EAJA. *Taucher,* 150 F.Supp.2d at 24. My order of October 24, 2001 then required the parties to submit briefs addressing two issues: "whether or not, under the Equal Access to Justice Act ("EAJA"), subscriber plaintiffs are 'prevailing parties' and whether or not, under EAJA, defendants' position was substantially justified." *Order of Oct. 24, 2001.* Opening briefs were due on December 7, 2001 and replies on December 17, 2001. *Id.*

Plaintiffs' time entries indicate that in the period from November 14, 2001 to December 18, 2001, plaintiffs' counsel spent 187.5 hours preparing the two briefs I required. The lion's share was the time spent by Steve Simpson, 140.5 hours. Marni Soupcoff added 37 hours and Scott Bullock, lead counsel, added ten hours. Defendants protest that this is excessive and should be reduced to 100 hours. Opp. at 20. Plaintiffs resist but would agree to a total of 140.5 hours, representing the hours of Steve Simpson, the lawyer who had primary responsibility for drafting the pleadings. Reply at 14.

Defendants' point is well taken. The two briefs submitted totaled 33 pages, meaning that, on average, plaintiffs' counsel spent 5.6 hours per page. While lawyers should take care and resulting pride in their work product, more than half of a working day per page is carrying such care and diligence to an extreme. Another

way to look at it is to realize that at the EAJA rate of $125 per hours, the two briefs cost $23, 437.50 or $710 per page. That is expensive for the Book of Kells. Plaintiffs' reduction of 47.0 hours still yields a total of 140.5 hours at a cost of $17,562.50 or $532.20 per page. That is still too much. The reduction defendants propose of allowing only for 100 hours is an eminently fair entitlement to 3.3 hours or $378 per page. I will, therefore, accept it and allow for only 100 hours of the 187.5 claimed by plaintiffs.

### The EAJA Rate

█ The reasonableness of the fees sought is a function of the hours spent and the rate charged. As I have explained, in this court, the Laffey Matrix has been used to ascertain a reasonable rate of compensation:

> This matrix, commonly referred to as the "Laffey Matrix" or the "United States Attorney's Office Matrix," is based on hourly rates allowed by the District Court in *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983). Use of an updated Laffey Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C.Cir.1988)(en banc). Subsequently, the Court of Appeals stated that parties may rely on the updated Laffey Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n. 14 (D.C.Cir. 1995).

*Whatley v. District of Columbia*, 224 F.Supp.2d 62, 66 (D.D.C.2002).

EAJA, however, sets the reasonable rate at a flat rate of $125 per hour. Defendants would have to concede that $125 per hour is less than the Laffey Matrix pays a first-year lawyer and only $25 more than

Laffey pays a law clerk or paralegal. Yet, defendants insist that plaintiffs' counsel should not even get the EAJA rate because they have failed "to identify the regular rates in effect during the relevant time period so the Court can assess the reasonableness of the claimed rate." Opp. at 12. In other words, defendants view plaintiffs' counsel as being obliged to show that their billing rates were at least as great as the EAJA rate before they get the EAJA rate, even though the EAJA rate is well below what the Laffey Matrix poses as the market rates for lawyers in the District of Columbia.

█ Plaintiffs' counsel's website indicates that they accept cases *pro bono* if acceptance will advance the libertarian philosophy the Institute for Justice espouses. *http://www.ij.org/index.shtml.* Furthermore, plaintiffs indicated in their initial application for attorney's fees that the Institute charges $250 for the services of its General Counsel and Vice President for Litigation and $180 for all other lawyers. *Memorandum of Points and Authorities in Support of Plaintiffs' Application for Attorney and Expert Witness Fees Pursuant to Equal Access to Justice Act* at 5. In addition, the Institute for Justice only accepts cases *pro bono* and does not have paying clients. *http://www.ij.org/index.shtml.* Thus, they do not seem to have hourly rates in the same sense as a profit-making law firm has hourly rates. If, however, the Institute accepts a case governed by a fee-shifting statute, it will get market rates or the compensation set by the statute because of the well-established principle that *pro bono* counsel or counsel who take a case on a discount because of its social merit are entitled to be compensated at market rates. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C.Cir.

1995); *Save Our Cumberland Mountains v. Hodel,* 857 F.2d 1516, 1524 (D.C.Cir. 1988). Hence, if EAJA did not have a flat rate but only allowed for a reasonable fee, plaintiffs' counsel would get market rates, whether or not they had a billing rate or accepted all cases *pro bono* or at a discount. If that is so, it is hard to understand how plaintiffs' willingness to accept no more than the flat rate can be described as excessive or unreasonable. Hence, defendants' objection to paying them what Congress has mandated even when that is less than they could command on the open market is meritless.

### The Initial Fee Application

On March 28, 2000, the court of appeals dismissed the defendants' appeal and on April 27, 2000 plaintiffs filed *Plaintiffs' Application For Attorney and Expert Witness Fees Pursuant to Equal Access to Justice Act.* In an accompanying memorandum they set forth the history of the case and then argued why they met their burden under EAJA of establishing that they were prevailing parties. They then explained how counsel calculated the fees sought. At this point, they did not advance the argument that I rejected, that the attorneys employed by the Institute were the prevailing parties. *Taucher,* 150 F.Supp.2d at 24. That issue arose thereafter. After defendants objected to compensating plaintiffs' counsel for time spent advancing the argument I rejected, plaintiffs' amended fee application eliminated any demand for compensation for time spent after April 27, 2000 and before March 30, 2001—the date of my decision. *Id. Compare* Opp. at 17 *with* Reply at 11. Since plaintiffs are not seeking compensation for advancing an unsuccessful argument and seek only compensation for an argument that I have accepted—that they prevailed in this litigation-they are entitled to the compensation they seek.

### Expert Witness Fees

 Initially, one of the expert witnesses, Gerald D. Gay, only specified the total hours he worked and the days on which he performed those services. Pet., *Expert Witness Documentation.* Defendants objected to his lack of specificity and plaintiffs attached to their *Amended Application* an affidavit from Gay in which he specified how he spent the hours he claimed. In my view, this specificity adequately indicates how Gay spent his time and overcomes defendants' initial objection. Plaintiffs are entitled to full reimbursement for Gay's fees and expenses.

### Lack of Specificity

 Defendants protest the lack of specificity in plaintiffs' counsel's time entries. This protest relates to defendants' argument that time spent in the representation of the ineligible plaintiffs, on certain issues, or on appeal is not compensable and the entries do not permit me to differentiate between compensable and noncompensable. Now that I have rejected the defendants' argument that certain work is not at all compensable, the degree of specificity the defendants demand is unnecessary. Nevertheless, I have reviewed the time entries and find, with two exceptions, that they set forth the work done adequately, particularly when they are read against the docket sheet and the pleading file. The two exceptions are an entry by Scott Bullock on February 12, 1999 for "Website discussions" and an entry for Miranda Perry on April 29, 1999 for "discuss evidence book with gonzalo." Even in context, I cannot determine what the lawyers did or how what they did related to the case. I will, therefore, deduct the hours claimed by these two entries.

Finally, I have found that the hours sought for the tasks performed, as stated

in the entries, to be reasonable. Except for the deductions I have made, I will allow them in full.

### Derivation of the final fee

The following chart indicates the deductions I am making:

| Topic | Hours claimed | Hours Allowed | deduction |
|---|---|---|---|
| Trial | 105.5 | 64 | 41.5 |
| Preparation of pleadings pertaining to EAJA filing | 187.5 | 100 | 87.5 |
| Entry of Feb 12, 1999 | 2.5 | 0 | 2.5 |
| Entry of April 21, 1999 | 0.25 | 0 | 0.25 |
| Totals | 295.75 | 164 | 131.75 |
| total deductions (hours * $125) | | | 16468.75 |

Since plaintiffs claim $181, 375 in fees, $16,468.75 must be deducted as follows:

| | |
|---|---|
| claimed | 81375 |
| deductions | 16468.75 |
| allowed | 164906.25 |

To that must be added the expert witness times and fees of $17,519.30 for a total of $182,425.55.

An Order accompanies this Memorandum Opinion. In addition, the clerk will enter judgment for plaintiffs in the amount of $182,425.55.

### ORDER

In accordance with the accompanying Memorandum Opinion, it is therefore, hereby,

**ORDERED** that Plaintiffs' amended Application for Attorney and Expert Witness Fees Pursuant to Equal Access to Justice Act [#107] is **GRANTED** in part and **DENIED** in part and that the Clerk shall enter judgment in favor of plaintiffs in the amount of $182,425.55.

**SO ORDERED.**